Ms. Kenney, I'm glad you were able to make it, you and your colleagues. We're ready whenever you are. Mr. Rogulski, I'm glad you made it too. Ms. Kenney. May it please the Court, my name is Sheila Kenney and with Ken Rose I represent the petitioner Errol Moses. We are before this Court on the denial of Petitioner's Rule 60B motion for relief from judgment. Petitioner's Rule 60B motion relates to his claim raised in his habeas petition that trial counsel were ineffective for their failure to investigate and present mitigation evidence of the sentencing phase of his capital trial. As this Court is aware, this is not the first time Petitioner has been before this Court. In his federal habeas proceedings, Petitioner, despite controlling law at the time, argued the ineffectiveness of his state post-conviction counsel was cause for the default of his trial counsel ineffectiveness claim. Petitioner made that same argument before this Court and was rejected. Petitioner raised this issue then to the United States Supreme Court and was denied. Mr. Moses is the only Petitioner from North Carolina who consistently and persistently argued during federal habeas proceedings that cause for the default of his trial counsel ineffectiveness claim was the ineffectiveness assistance of his state post-conviction counsel. Mr. Moses then filed his Rule 60B motion, that's that issue here, promptly after this Court's decision in Fowler v. Joyner, which settled the question of whether North Carolina should have a state post-conviction counsel, fell within the Martinez v. Ryan, Trevino v. Fowler line of cases and elevated the change in the law to an extraordinary circumstance. In reviewing a 60B motion, the United States Supreme Court in Gonzalez v. Crosby said extraordinary circumstances justifying the reopening of a judgment rarely occur in the habeas context, but the Court did not say never. Petitioner has demonstrated unique and exceptional circumstances such that... What you perceive our standard of review is on the one issue, that is, the District Court concluded that the 29 months and 15 months was unreasonable, and that's one of the issues we review. What is the standard for our review of that conclusion? Your Honor, the standard of review for the issue as to the timeliness is whether... The standard review is on the balancing of the equities of a Rule 60B abuse of discretion, but a standard of review is... The legal question as to whether or not the new law of Martinez and Trevino can serve as a basis for Rule 60B, and also whether or not there was an erroneous view of the law. And as to legal question mixed with fact... It's a question of reasonableness under Rule 60B-6, Rule 60C-1, I guess, and why wouldn't a question of reasonable time be a matter for the District Court's discretion? The question of whether Petitioner Moses was untimely is abuse of discretion. As to the question... On the issue I asked you about, then, we have to conclude that the District Court, in this case, abused its discretion in concluding that it was untimely. Therefore, unreasonable. Unreasonable because it was untimely. The lower court decided on two issues. And on the issue of whether or not Martinez, Trevino, and Fowler could serve as a basis for Rule 60B, the court relied on Dowell. Its erroneous view of the law was necessarily an abuse of discretion. Before you even get to that, you have to deal with the timeliness question. It's pointed out that Martinez came down on March 20, 2012, and counsel waited two-and-a-half years after Martinez in 15 months. After Fowler, to make his motion. Plus the fact you had a pending 60B motion at the time that Martinez came down, which could have been easily amended to include the Martinez claim. And you say, well, no, not really because Fowler is the operative case, but the case that you're seeking relief under, and on which you ground your claim, is Martinez. That was the case that put you on notice that you conceivably had an ineffectiveness claim on state counsel, whether it's a colorable claim is another matter. But that puts you on notice that your claim was not procedurally defaulted. And yet there was a two-and-a-half-year wait, even in the face of the fact that a 60B motion was pending by Mr. Moses in the federal court at the time. And so if we reverse the district court for abusive discretion in determining the content of reasonableness here, we're coming pretty close to saying, as a matter of course, you can wait two-and-a-half years. And if during that two-and-a-half-year period a case comes along that arguably lends support to your claim, that automatically makes it timely. And that's pretty, an abusive discretion reversal on something like that has pretty far-reaching consequences. In terms of Martinez and Trevino, it was not until Fowler that it was clear from this circuit that North Carolina fell within it. And under a Rule 60B, it's a high bar. And it would be an improper use of a Rule 60B to seek an extension or clarification of law. And it was not until Fowler v. Joiner that this circuit made clear the settled law. And it was at that point Petitioner promptly filed his Rule 60B motion. But you're seeking relief under Fowler two-and-a-half years. You're seeking relief under Martinez two-and-a-half years after Martinez came down and asking us to reverse the District Court for abusive discretion and holding that untimely. The District Court found it untimely for filing after Fowler and also found that there would be no way that Martinez, Trevino, or Fowler could ever rise to... I see why you put so much emphasis on Fowler in view of the fact you stated right at the beginning of your argument that he continuously criticized the process because his lawyer was not serving him well during the habeas proceedings. And he anticipated Martinez. And as soon as Martinez comes down, he's got to say, Aha! I knew somebody would support me. And at that point, amend his 60B-6. And it's as if he was turning his head to something else at that point, I guess. Probably what is... if he was candid, but the District Court said, You can only wait so long and I'm going to make a judgment, a discretionary judgment, that I think the 29 months' wait is too long. And, of course, the other courts that have looked at this issue have used even shorter times to find them unreasonable. So it would be hard to tell our District Court that it was abusive of its discretion when 29 months is sort of an outlier in the long term. There are many other cases that are shorter that have found unreasonableness. It's hard to tell the District Court he messed it up, didn't it? And the 60B motion was pending at the time Martinez came down. The 60B motion that was pending at the time related to a Gilface claim. This 60B motion that Moses has before the court now is related to sentencing. In 2008 when Mr. Moses was no longer in habeas proceedings because of the denial of certiorari from the United States Supreme Court, that was the end of his habeas proceedings in 2008. There was no avenue at that point related to his ineffectiveness assistance of counsel claim. Well, you know, one of the difficulties here is that you have about four different hurdles to get over to succeed on your claim. One is the timeliness, the length of time. The other is, as Martinez and Thaler itself says, it has to be a colorable claim. Third is there has to be a lack of unfair prejudice to the opposing party. And fourth, there has to be extraordinary circumstances. And so you have at least four. And the Strickland claim, I guess, has two circumstances of its own, which at least you have four different hurdles you've got to clear. One is the timeliness question. The second is extraordinary circumstances. And as you yourself pointed out quite correctly, Gonzalez v. Crosby, the Supreme Court says, extraordinary circumstances occur only rarely in the habeas context. Only rarely. And the reason is that you can use 60B, if we open up the extraordinary circumstances inquiry to the extent you want us to, we've sanctioned a complete end run around direct appeals and around AEDPA standards for collateral relief. And it just tears a gaping hole in the AEDPA standards, which is why the Supreme Court goes out of its way and says specifically, extraordinary circumstances only rarely occur in a habeas ruling that would justify relief under 60B-6. So how do we deal with that? And you've got four or five circuits out there saying that Martinez and Thaler do not constitute extraordinary circumstances. And that standing alone is not. In this case, it's the balance of the equities, and that is the tipping point to bring the 60B motion, was this circuit's decision in Fowler v. Joyner, which made clear that North Carolina fell within the Martinez and Thaler. That is not the only extraordinary circumstance. As has been clear, Mr. Moses was diligent in raising this issue, the Martinez issue, throughout his federal habeas proceedings and raised them to the district court, the fourth circuit, and to the U.S. Supreme Court. Don't you think that cuts against him? I mean, it shouldn't because he was creative and anticipated that issue. But it seems to me when the Supreme Court comes down and says, yes, that is a real issue, then you would think he'd jump on it within a day. It should not cut against a petitioner who is out of habeas proceedings at that time. For a petitioner who is still in habeas proceedings and is seeking to- He has a 60B-6 pending, and two days later he could have had a motion to amend that and preserve that issue based on the change in law. He didn't have much forum, I guess, before Martinez, did he? No, before Martinez and Trevino and Fowler. In addition, there's been no harm to the state during the period of time since Martinez, Trevino, and Fowler. There have been no executions in North Carolina. There are none on the horizon. The finality of judgment as standing alone would not be a reason to count against Mr. Moses' favor. In addition, at the same time, in terms of respect for comedy, Mr. Moses has had and continues to have pending motions for appropriate relief and properly filed in state court under the North Carolina Racial Justice Act. Thus, there's been no delay in the carrying out of the judgment or the finality of the judgment as it could not have been. Well, the crime in this case was committed, what, almost 20 years ago? That's correct. Pretty close. And as you point out, he's procedurally run up every tree he could have. At some point, the system puts all these standards on to say, we've balanced the ability to correct error with the need for finality. And as Judge Wilkinson pointed out, there's barrier after barrier in order to protect the notion of finality at some point, some fair and reasonable point. And so what we've got here is we have a final judgment that's final, final, final, until the Supreme Court comes out with a procedural ruling that precludes default on habeas. And as the Supreme Court later says, that's not the stuff that we meant in the Rule 60b-6 for extraordinary circumstances. That's covered under AEDPA. And AEDPA standards, we all agree, have been fulfilled in the favor of finality now. So it's a difficult case. You've mounted a noble tack, but I just wonder, if you knock down one gate, how are you going to get the next one down? And Petitioner Moses has argued this through his habeas proceedings. It has been sort of the task of Sisyphus, rolling the rock up the hill with the law against him, and now the law is on his side as to the default of his compelling and effective assistance of trial counsel claim, and still attempting to get it up the hill. In terms of the respondents. The only instance, it seems to me, that the Supreme Court has really said when something is really old and stale, we'll look at it again as if there's a real issue of innocence. And that hasn't been presented in this case, has it? No, it has not. This is always related to the sentencing phase of his capital trial. And in terms of his claim, he had a compelling case of trial counsel ineffectiveness that was not raised by his post-conviction counsel. We can debate that. I would question that, given the strict standards of definite, both on the prejudice prong and the strategy prong. But can you understand where we're coming from? Because if we hold that every subsequent change in habeas procedure represents an extraordinary circumstance justifying relief at some belated time under Rule 60b-6, we're just opening it up. Because, again, the Supreme Court, Gonzalez could not be clearer. It says changes in habeas procedure occur all the time, and it will be exceedingly rare that they constitute an extraordinary circumstance. How do we fly in the face of that decision and reverse the district court under these circumstances for abuse of discretion at the same time? It just opens up everything. Chief Judge, am I permitted to answer? It is this case, just this case, that on the balancing of the equities, that it was an abuse of discretion given that the prompt filing after Fowler, such it was settled law at that time, and that it tipped the balance such that Martinez, Trevino, and Fowler then made an extraordinary circumstance. And then with the balancing of the other extraordinary circumstances, the diligence, the lack of harm to the State in terms of the finality, the comedy and the respect for it, that Mr. Moses should be allowed to proceed further. He should go against the 5th, 6th, 7th, and 11th circuits. On the balancing of the equities? Yes. Okay, thank you. Mr. Rogulski. May it please the Court, my name is Peter Rogulski. I'm an Assistant Attorney General from the State of North Carolina. I'm here on behalf of the respondent. The moment Martinez was decided, Petitioner and his counsel were aware of its impact because, as the panel is very well aware, they have raised this issue before. They raised it before the district court in an attempt to prevent the procedural bar from being applied. They raised it before this court. They raised it before the United States Supreme Court. So they, of all people, were aware of its impact in particular on their case. Their failure to amend their pending 60B motion, which was pending at the time that Martinez was decided and was not ruled upon for at least nine months post the Martinez decision, is fatal to their claim. The district court did not abuse its discretion in denying the motion under these particular circumstances. And it is very clear that the fact that they had a pending 60B is fatal to their claim because there are at least two other cases that have used the failure to raise the issue at the first available opportunity to shorten the period of time under Rule 60B. And the first case, of course, is Gonzalez. Because what happened in Gonzalez was the Supreme Court decided that a nine-month delay in raising the 60B motion was too short because the petitioner in that case did not raise the claim that being the split in the circuit is to how to count time for tolling either before the 11th Circuit or in his petition for writ of certiorari. The other case that talks about this issue is the one that we cited as additional authority, that being the Shepherd case. In Shepherd, what happened there, a three-month delay post Martinez was determined to be too long a period of time because the Martinez case was decided while Shepherd had one month left to file his petition for writ of certiorari. He never bothered raising the issue within that petition. And so as a consequence, the court determined that when he came in and did file it within three months, that was untimely because he didn't raise the issue before the court at the first available opportunity. So I would submit to the court that the first available opportunity that this petitioner had was in his pending 60B motion, which could have been amended, and add to that the fact that he had special notice of the significance of the Martinez rubric because he had raised the issue himself at times past. Even if a petitioner did not have special notice based on having raised it in the past, there's no excuse for waiting two years and six months post the decision. Case law from this circuit specifically states that the line of demarcation is the opinion which changed the law if you're going to rely on some change in the law in support of your 60B6 motion. And there are other circuits that likewise hold that the line of demarcation is the case that changed the law. Petitioners' reliance on Fowler is ill-placed, and there are a number of reasons for this. Number one, it previously raised the issue and they were aware of its significance. Number two, they claim that the law was unsettled and that in their brief they say that there had been a number of instances when the state had opposed the application of Martinez in North Carolina. The truth of the matter is this is an adversarial system. Somebody has to raise the issue. This petitioner was clearly aware of the issue. And simply because the state takes an adversarial position doesn't give you an excuse for not raising the issue before the court in a timely fashion. Number three, I think that this issue has been in some part expressly rejected in Fowler. In Fowler, the question was whether or not Martinez provided sufficient basis to appoint Martinez counsel under 3599. And in that particular instance, the court determined that Martinez was decided while the case was still pending before the district court. Counsel did nothing at that particular point in time to examine or raise the Martinez issue. And so now as a consequence, once the matter came before this court, it was too late to go back and ask for Martinez counsel because as this court recognized, Martinez provided you all the knowledge you needed at that point. Notably, as Your Honor has pointed out, Fowler did not change the law. Martinez did. And so the line of demarcation has to be the case to change the law, which would be Martinez. And lastly, I think that- If they rely on Martinez now, they could have relied on it then. Excuse me, sir? If they're relying on Martinez for relief now, they could have relied on it then. Absolutely. That is correct. And lastly, I think Fowler really didn't break any new ground, so you wouldn't have to wait for it anyway. I think as early as McCarver v. Lee, the Fourth Circuit had looked at North Carolina post-conviction law and had determined the circumstances under which an ineffective assistance of trial counsel claim was to be raised on direct appeal and those circumstances under which it needed to await a post-conviction proceeding. The added difficulties here are even if you reverse the district court for abuse of discretion on timeliness, you then go to the extraordinary circumstances under Rule 60B, and even if you get past the extraordinary circumstances under Rule 60B, you have to ask, was counsel ineffective at trial in some way? And even if you get past that, you have to ask if counsel is ineffective in state post-conviction proceedings for failure to say that counsel was allegedly, under Strickland, ineffective at trial. I mean, there's just hurdle after hurdle after hurdle after hurdle. And you have four or five different hurdles, each one of which is deeply problematic in its own right. I agree wholeheartedly with you, Your Honor, and we've raised each and every one of those issues in our brief. Once you get past the question of whether or not this is a timely 60B motion, the next question becomes whether or not there are extraordinary circumstances here. And I would submit to you that there are not. The only thing that has happened is— We've got pretty clear holdings out of four circuits. I don't know which ones they are. I know the 11th and the 6th and the 5th. And the 7th. And the 7th have held that Martinez did not represent an extraordinary circumstance. That is correct. Because guess what? Gonzalez said that extraordinary circumstances based upon changes in habeas procedural law would be very rare indeed. That is correct. And as the Supreme Court has made very clear, exceptional circumstances arise in circumstances where the petitioner has been completely and totally faultless. The first case that I was able to find that discussed this was the Clapper Rock case. And in that particular circumstance, you had an individual who at the time of a deportation proceeding was incarcerated, impoverished, and ill and completely unable to defend himself. And that was a— What bothers me from a larger standpoint is this constant attempt to re-litigate everything over and over again. And no sooner does Congress legislate restrictions on habeas law in AEDPA that we start chipping away at AEDPA not only under Rule 60B but under these 2241 motions. And it's one thing after another to try to circumvent what Congress has done and re-litigate things not just in one habeas proceedings but in multiple habeas proceedings so that even proceedings that are in cases that are perfectly lawfully decided are never put at rest. And it's just an endless cycle that we're experiencing. And it's a serious threat in my view to the functioning of the criminal justice system. And, Your Honor, I would agree with you. And this is precisely why the Supreme Court recognized that the extraordinary circumstances requirement of 60B-6 stands as a bulwark against the finality of—to protect the finality of judgments. And that's why the bar is so high. And that's why there shouldn't be, but in rare cases, an extraordinary circumstance. And this is clearly not an extraordinary circumstance. Nothing has changed here but the law. And that was specifically what the magistrate judge found, and that's specifically what the district court found, that nothing has changed in this case but the fact that Martinez was decided. They've brought out no new evidence. They've just simply recycled the argument that they've used before, except now they're hanging a 60B moniker on it. And, again, as Your Honor has noted, the district court found that at the time of the original habeas judgment, which would have been approximately 2005, Coleman was well-established law. The case was correctly decided at the time. Nothing had changed but the law. And the change in the law was, of course, to open the judgment long since final. And that's precisely what the district court found. Again, if you'd like me to speak to some of the other factors that counsel has to overcome or petitioner has to overcome, as you've noted. The problem with getting into the merits is we defeat the whole purpose of the extraordinary circumstance rule and the timeliness rule. I mean, I don't blame you for arguing the merits. You've made some compelling arguments. But I think one of the problems of getting into them is that the whole purpose of the extraordinary circumstance doctrine and the timeliness issue is to alleviate the need to do that. If the panel doesn't prefer that I discuss the merits, I certainly won't waste Your Honor's time with that. Thank you. I think we understand your position. In that instance, thank you for your consideration. Thank you, Your Honor. Okay. Ms. Kinney. Ms. Kinney. Petitioner has been before this court on this issue. And while it seems to be taken as it should be going against him, that he recognized that there should be a change in Coleman. It should not go against him. As to the timeliness issue, Petitioner filed the motion as soon as he believed it was settled law, did not want to come when it was unsettled, and came when he felt it was appropriate. This was an underlying strong case of ineffective assistance of trial counsel, and Petitioner has never had a court review its merits. Thank you. All right. We'll come down and greet counsel and then go into our next case.
judges: William B. Traxler Jr., J. Harvie Wilkinson III, Paul V. Niemeyer